326 So.2d 665

**Michael Anthony MAYOLA**

v.

**STATE.**

**6 Div. 86.**

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

Michael Anthony Mayola, pro se.

William J. Baxley, Atty. Gen., and Sam L. Webb, Jr., Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

The record before us in this case shows that on November 15, 1962, appellant was convicted of murder in the first degree and sentenced to imprisonment in the penitentiary for life. While serving his sentence, he became an avid student of law by means of a library furnished him at public expense. The record does not indicate that he spent much time to determine legal standards of behavior but that in the eleven years service of his sentence prior to the institution of this proceeding he spent months and even years in self-service in delving deeply into legal means by which

the guilty, as well as the innocent, can escape punishment as criminals.

On April 3, 1973, appellant filed a pro se petition for writ of error coram nobis, which he subsequently amended, and which as amended was heard and denied in August 1973. The case now before us is an appeal from the judgment denying the coram nobis petition, which appeal was submitted on pro se brief of appellant and brief of appellee on November 25, 1975. As an indigent, he was afforded counsel on the hearing of the coram nobis petition, a free transcript and counsel on appeal.

In his coram nobis petition, he sets forth a miscellany of charges relative to his communications with law enforcement officers, their conduct relative to the crime with which he was charged, his arraignment, his trial and publicity attendant upon his trial and circumstances preceding it. Categorized, the charges were:

1. He was interrogated without counsel having been provided for him and "without signing a waiver" of the right to counsel; and

2. That he was arraigned without benefit of counsel;

3. That he was in a "state of fear and despair of his life" and that his statements "were not the product of a rational intellect and were mentally coerced, and received in violation of the 5th, 6th, and 14th Amendments."

4. That he was not aware of his right to remain silent and not to incriminate himself and that no "relative warnings or information" were given him.

There were other purported charges in the amended petition, some of which were to some extent repetitious of the charges stated above; some were vague and indefinite, consisting chiefly of argument; some of them were not even alluded to by him when he testified on the hearing of the petition.

On the hearing, petitioner was his only witness. He testified that his repeated confessions that he had been guilty of the crime against nature and had deliberately murdered the victim, an eleven-year-old boy, by shooting him under an eye with a pistol, were made before he was made aware of his rights against self-incrimination, his right to counsel, and were in effect extorted from him instead of being voluntary on his part. He also testified that at his arraignment, at which he pleaded not guilty and not guilty by reason of insanity, he was not represented by counsel. He indicated that two of his counsel, appointed by the court, now deceased, were hostile or unsympathetic to him. He said very little, if anything, that constituted any indication that the other two attorneys appointed by the court did not defend him with superior skill and devotion.

Evidence for the State on the coram nobis hearing consisted of the testimony of Russell E. Vorpagle, a former investigator for the Federal Bureau of Investigation at Baltimore, Maryland; Robert G. Jenson, former assistant agent in charge of the FBI office at Birmingham; Roy McDowell, long time an investigator with the Alabama Department of Public Safety; and one of his attorneys on the trial of his case, now Honorable Wayman Sherrer, United States Attorney for the Northern District of Alabama.

Mr. Vorpagle testified that while he was in his office in Baltimore, on August 7, 1962, he was asked to speak to a man who had come into the office and wanted to talk about a parole violation. It was Mayola, the appellant. After discussing the matter of a possible parole violation, Mayola told him that something had been bothering him a great deal, that he had killed a little boy in Alabama and wanted to get it off his chest. The witness had never heard of the incident. Mayola gave him the details of the crime. According to him, "he volunteered all of these statements." He was not in custody at the time. With the exception of advising de-

fendant that, if he was indigent, he would be furnished free counsel if desired (mandated two years later as to offenses "under FBI jurisdiction" by the Criminal Justice Act of 1964), the witness complied with all of the requirements thereafter compiled in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. (1966).[1] After the discussion, a transcript of the colloquy between him and Mayola was made, which was read to Mayola, but which he declined signing. The transcript was introduced in evidence on the coram nobis hearing. Included in it are the following statements as to what happened five days before, after he had kidnapped the victim and his youthful companion, another boy, at Midfield in Jefferson County, the other boy had escaped, and he had taken the victim to a house in Blount County, put him in a bed and committed sodomy:

"I dozed off a few times. And in the early morning, while he was still asleep, I took a .22 caliber revolver from under my pillow and shot him. I tried to make it as painless as possible. I looked around and pulled the trigger.

.    .    .    .    .    .

"After I shot the boy, I wrapped him up and took him outside to a trench around the cabin. I put him in the corner of the trench and covered him with dirt. Then I went to work."

Mr. Jenson testified that he went to Etowah County August 12, 1962, for a meeting with other law enforcement personnel and defendant. He had his notes of the conference, which he read on the hearing and which showed that defendant was fully advised of, and waived, his rights, including his right to an attorney, and there the defendant made a complete confession in line with the confession he had made in Baltimore. He had obtained a copy of the transcript of the confession in Baltimore, in which defendant made some minor corrections and then signed it. The witness emphasized the voluntariness of the conduct of Mayola and stated that Mayola had not complained of any mistreatment "in any way whatsoever."

Mr. McDowell testified that he went with Sheriff Stephason of Blount County to Baltimore, Maryland, and brought defendant back to Alabama, where he was placed for a while in the Etowah County jail, that defendant voluntarily signed a waiver of extradition. Before he talked to Mr. Mayola, he advised Mr. Mayola of his constitutional rights. He made a statement confessing the crime and signed it.

Mr. Sherrer testified that he accepted the appointment as one of Mr. Mayola's attorneys, that he worked with the other attorneys in the case, that he actively took part in the trial, that he discussed the matter with Mr. Mayola in the jail; that he made an investigation and interrogation of witnesses. He knew about the confessions that Mayola had made; he said Mr. Mayola never denied that he signed a confession. He said he was present when Mr. Mayola was arraigned in the court room. He supported his testimony by notes that he had made contemporaneously with his services as Mr. Mayola's attorney. He fully advised Mr. Mayola as to his rights. He and Mr. Gerald Swann "engaged in very vigorous defense for the Defendant." Mr. Mayola never asked the lawyers to ask any questions that they "failed, refused, or neglected to ask." He said that in Mr. Swann's closing argument to the jury he asked the jury "not to electrocute Mr. Mayola, but to give him life or nine hundred and ninety-nine years." The case was not appealed. After discussing the matter with his client, the decision was made not to appeal. This was with his client's consent.

Appellant's pro se brief in this Court consists largely of a congeries of

---

1. The witness' testimony finds support in *Miranda*, 384 U.S. at 483, 86 S.Ct. 1602, in references made to standards previously observed by the FBI, which served as a guide to the Court's pronouncements in the case.

claims, many of which are in addition to any claim or contention made in the petition and on the hearing in the trial court, and most of which, if true, would have been known to defendant and his attorneys before or during his trial. Some of them relate to claimed adverse rulings by the trial court, which could have been reviewed by the trial court on motion for new trial and by[/] this Court on appeal. The remedy afforded by writ of coram nobis is "not intended to relieve a party from his own negligence, and cannot serve as a substitute for an appeal, nor to enable defendant to question the merits of the case for which he stands convicted." *Groce v. State*, 48 Ala.App. 709, 267 So.2d 499.

 Even though the petition falls short of containing clear and positive averments entitling petitioner to relief upon proof of the averments, we find that any averments thereof that could be construed as sufficient to entitle him to relief, if proved, have been proved to be absolutely false by testimony presented by the State. From the record presented to us, it appears that petitioner's allegation of a violation of his constitutional rights is without foundation, that the contest between the State and this defendant and his attorneys revolves around the question of whether he should be sentenced to death or to life imprisonment, that his attorneys won for him an outstanding victory and that his present charges are in marked contrast with the truth he proclaimed, according to the record before us, upon allocution, "I deserve at least that much."

The case was tried ten years before *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); the coram nobis petition was filed the next year after *Furman.* It is obvious that without *Furman,* he would not have dared to ask for a new trial by motion or by appeal and thereby run the risk again of capital punishment; that with *Furman,* there is nothing for him to lose by a petition of this kind, which we find absolutely without

merit and which in no way tends to mitigate the terrible crime committed or to assuage in the least the grief of the parents of the youth whose "blood is crying . . . from the ground" for justice.

The judgment of the trial court was as follows:

"On hearing of Petitioner's application or petition for writ of error coram nobis, the Court finds no proof in support of petitioner's allegations and satisfactory proof that petitioner was at all times fully and adequately advised and informed of his constitutional rights, and that no rights guaranteed to him by the Constitution of Alabama were violated in the least. It is therefore considered and ordered by the Court that petitioner's petition or application be and is over-ruled and denied."

The judgment should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

All the Judges concur.